UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re: : Chapter 11
 :
RIVERROCK NEHEMIAH REALTY LLC, : Case No. 14-45041 (NHL)
 :
    Debtor. :
 :
-----------------------------------------------------------------x

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## IN FAVOR OF ECP PROPERTY II LLC

    Movant, ECP Property II LLC ("ECP"), by its attorneys and pursuant to 11 U.S.C. § 362 and Federal Rules of Bankruptcy Procedure 4001 and 9014, moves for relief from the automatic stay, and for cause states:

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and 11 U.S.C. § 362. This is a contested matter under Federal Rules of Bankruptcy Procedure 4001 and 9014, and is a core proceeding.

    2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

    3.    Riverrock Nehemiah Realty LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 2, 2014 (the "Petition Date").

**The Building Loan**

    4.    As evidenced by the declaration of Nathan Cann annexed hereto as Exhibit 1, prior to the Petition Date, on August 20, 2008, Debtor and Banco Popular North America

243650

("Banco Popular") entered into a Building Loan Agreement (the "Building Loan Agreement") and related agreements and documents that established a $1,912,341.00 commercial loan (the "Building Loan") to Debtor and otherwise to reflect certain loan agreements between the parties. A copy of the Building Loan Agreement is annexed hereto as Exhibit 2.

5. Debtor and Banco Popular entered into a $1,912,341.00 Building Loan Note (the "Original Building Loan Note") on August 20, 2008 that evidenced the Building Loan. A copy of the Original Building Loan Note is annexed hereto as Exhibit 3.

6. The Original Building Loan Note included Debtor's promise to make certain payments to Banco Popular and to perform various other obligations.

7. Debtor subsequently entered into a Building Loan Note Extension and Modification Agreement (the "Building Loan Note Modification Agreement") with Banco Popular on December 8, 2010. Among other things, the Building Loan Note Modification Agreement reduced the principal amount of the Original Building Loan Note to $1,887,583.56 and extended the maturity date of the Original Building Loan Note to March 31, 2011. A copy of the Building Loan Note Modification Agreement is annexed hereto as Exhibit 4.

8. Together, the Original Building Loan Note and the Building Loan Note Modification Agreement are referred to as the "Building Loan Note."

9. The Building Loan Note is secured by a Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated August 20, 2008 (the "Building Loan Mortgage") executed by Debtor in favor of Banco Popular, granting a lien and security interest in the real property and improvements known as 774 Rockaway Avenue, Brooklyn, New York, Block 3602, Lot 1002 (collectively, the "Property"). A copy of the Building Loan Mortgage is annexed hereto as Exhibit 5.

**The Project Loan**

10. Also on August 20, 2008, Debtor and Banco Popular entered into a Project Loan Agreement (the "Project Loan Agreement") and related agreements and documents that established a $349,669.00 commercial loan (the "Project Loan") to Debtor and otherwise to reflect certain loan agreements between the parties. A copy of the Project Loan Agreement is annexed hereto as Exhibit 6.

11. Debtor and Banco Popular entered into a $349,669.00 Project Loan Note (the "Original Project Loan Note") on August 20, 2008 that evidenced the Project Loan. A copy of the Original Project Loan Note is annexed hereto as Exhibit 7.

12. The Original Project Loan Note included Debtor's promise to make certain payments to Banco Popular and to perform various other obligations.

13. Debtor subsequently entered into a Project Loan Note Extension and Modification Agreement (the "Project Loan Note Modification Agreement") with Banco Popular on December 8, 2010. Among other things, the Project Loan Note Modification Agreement reduced the principal amount of the Original Project Loan Note to $97,327.83 and extended the maturity date of the Original Project Loan Note to March 31, 2011. A copy of the Project Loan Note Modification Agreement is annexed hereto as Exhibit 8.

14. Together, the Original Project Loan Note and the Project Loan Note Modification Agreement are referred to as the "Project Loan Note."

15. The Project Loan Note is secured by a Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated August 20, 2008 (the "Project Loan Mortgage") executed by Debtor in favor of Banco Popular, granting a lien and security interest in the Property, chattels, intangibles, rents, revenues, income and other benefits of the Property,

and all proceeds of any of the foregoing. A copy of the Project Loan Mortgage is annexed hereto as Exhibit 9.

16. Banco Popular evidenced its interest in the Property, chattels, intangibles, rents, revenues, income and other benefits of the Property, and all proceeds of any of the foregoing by filing a financing statement with the New York State Secretary of State, which the Secretary of State recorded on October 10, 2008 as filing number 200810100693968. Banco Popular filed a continuation statement with the New York State Secretary of State, which the Secretary of State recorded on May 10, 2013 as filing number 201305105507770. Copies of the financing statement and the continuation statement are annexed hereto collectively as Exhibit 10.

17. Also on August 20, 2008, Debtor executed an Assignment of Leases and Rents (the "Assignment of Leases and Rents") in favor of Banco Popular, and executed an Assignment of Contracts (the "Assignment of Contracts") in favor of Banco Popular. Copies of these documents are annexed hereto collectively as Exhibit 11.

18. Together, the Building Loan Agreement and the Project Loan Agreement are referred to as the "Loan Agreements."

19. Together, the Building Loan Note and the Project Loan Note are referred to as the "Notes."

20. Together, the Building Loan Mortgage and the Project Loan Mortgage are referred to as the "Mortgages."

21. Collectively, the Loan Agreements, the Notes, the Mortgages, the Assignment of Leases and Rents, the Assignment of Contracts and all other related documents, instruments and agreements evidencing Debtor's obligations and indebtedness to Banco Popular are referred to as the "Loan Documents."

**Defaults, Acceleration, and Commencement of Foreclosure Proceedings**

22. The Notes matured on March 31, 2011 (the "Maturity Date").

23. Debtor defaulted on its obligations to Banco Popular under the Notes and the Loan Agreements by, among other things, failing to pay Banco Popular all amounts due under the Loan Documents on the Maturity Date.

24. Banco Popular, through its counsel, notified Debtor of Debtor's default and made demand upon Debtor for payment. Despite demand, Debtor failed and refused to make payment of its outstanding obligations to Banco Popular.

25. Due to Debtor's defaults, and as permitted by the Loan Documents, Banco Popular commenced proceedings in the Supreme Court of the State of New York, County of Kings, in the action styled <u>Banco Popular North America v. Riverrock Nehemiah Realty LLC, et al.</u>, Index No. 3763/12 (the "Foreclosure Action"), to foreclose upon the Property.

26. On July 17, 2014, the Supreme Court entered a *Judgment of Foreclosure and Sale* (the "Judgment of Foreclosure") in the Foreclosure Action, directing that the Property be sold at public auction and appointing Richard L. Herzfeld, Esq. as Referee for that purpose. A copy of the Judgment of Foreclosure is annexed hereto as Exhibit 12.

27. Referee Herzfeld scheduled the public sale of the Property for October 2, 2014. Copies of the notices of sale filed in the Foreclosure Action are annexed hereto collectively as Exhibit 13.

**Banco Popular's Assignment of the Loan Documents to ECP**

28. By a Loan Purchase and Sale Agreement dated September 3, 2014, Banco Popular assigned to ECP all of Banco Popular's right, title, and interest in and to the Loan Documents and all amounts due thereunder.

29. Copies of the Allonges to the Building Loan Note and the Project Loan Note are annexed hereto collectively as Exhibit 14.

30. ECP had recorded in the New York City Department of Finance, Office of the City Register, an Assignment of Building Loan First Mortgage, Assignment of Leases and Rents and Security Agreement dated September 22, 2014 and an Assignment of Project Loan Mortgage dated September 22, 2014, assigning the Building Loan Mortgage and the Project Loan Mortgage from Banco Popular to ECP. The City Register recorded these instruments as document numbers 20141000300460001 and 20141000300439001, respectively. Copies of these recorded instruments are annexed hereto collectively as Exhibit 15.

31. ECP had recorded in the New York City Department of Finance, Office of the City Register, an Assignment of Assignment of Leases and Rents dated September 22, 2014, assigning the Assignment of Leases and Rents from Banco Popular to ECP. The City Register recorded the instrument as document number 2014100300379001. A copy of the recorded instrument is annexed hereto as Exhibit 16.

32. ECP had recorded with the New York Secretary of State and with the New York City Department of Finance, Office of the City Register, financing statement amendments listing ECP as secured party. The Secretary of State recorded the instruments as document numbers 201410238421579 and 201410238421581, and the City Register recorded the instrument as document number 2014102400685001. Copies of these recorded instruments are annexed hereto collectively as Exhibit 17.

33. Debtor's filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date resulted in the postponement of the foreclosure proceedings involving the Property.

## RELIEF REQUESTED AND BASIS THEREFOR

34. ECP seeks relief from the automatic stay of § 362 of the Bankruptcy Code so that it may resume the foreclosure proceedings involving the Property.

35. As of the Petition Date, the outstanding balance due to ECP under the Loan Documents totaled $2,329,133.02, plus accrued and unpaid interest, reasonable attorneys' fees, and other costs and expenses incurred by ECP in enforcing its rights under the Loan Documents.

36. Debtor's *Amended Schedule D* [Doc. 17] values the Property at $1,949.130.00.

37. Debtor has not made any post-petition payments to ECP.

38. The standard for granting relief from the automatic stay in a Chapter 11 proceeding, pursuant to § 362(d) of the Bankruptcy Code is as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>
> (A) the debtor does not have an equity in such property; and
>
> (B) Such property is not necessary to an effective reorganization.

The requirements for terminating the automatic stay under § 362(d) are in the disjunctive, such that if the Court finds cause to grant relief from the stay or finds that Debtor has no equity in the property sought to be foreclosed, the Court must lift the stay. In re Diplomat Elec. Corp., 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988).

**ECP Is Entitled to Relief for Cause**

39. ECP is entitled to relief for cause, including relief under § 362(d)(3) of the Bankruptcy Code.

40. Debtor is a "single asset real estate" entity, as that term is defined in the Bankruptcy Code. The Property consists of commercial condominium units and constitutes a single project that generates all or substantially all of Debtor's gross income.

41. As an initial matter, upon information and belief, Debtor has collected rent from the Property and used ECP's cash collateral without ECP's consent or authority from the Court. The Loan Documents generally, and the Assignment of Leases and Rents specifically, grant ECP a lien on and security interest in, among other things, all rents, revenues, income and other benefits of the Property. The rents, revenues, income, or proceeds of ECP's collateral held or collected by Debtor represent ECP's cash collateral, and ECP does not consent to Debtor's use of ECP's cash collateral. Cf. In re South Side House, LLC, 474 B.R. 391, 412 (Bankr. E.D.N.Y. 2012) (rents represented lender's cash collateral pursuant to an assignment of rents and 11 U.S.C. §§ 552(b) and 363(a)). By e-mail dated November 4, 2014, undersigned counsel advised Debtor's counsel that ECP did not consent to Debtor's use of ECP's cash collateral and invited Debtor's counsel to discuss the matter. A copy of undersigned counsel's e-mail to Debtor's counsel is annexed hereto as Exhibit 18. Debtor's counsel did not respond to undersigned counsel.

42. Debtor's use of ECP's cash collateral without ECP's consent or court order constitutes cause for relief from the automatic stay. See, e.g., 11 U.S.C. § 363; In re Covington, No. 09-04624-HB, 2009 WL 6853048, at * 4 (Bankr. D. S.C. Nov. 20, 2009); In re FCX, Inc., 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985). ECP otherwise lacks adequate protection of its

interest in the Property, given that Debtor has failed to make any post-petition payments to ECP under the Loan Documents. Debtor's continued use of the Property will diminish its value.

43. Secondly, ECP is entitled to relief from the automatic stay for cause pursuant to § 362(d)(3) of the Bankruptcy Code. Under § 362(d)(3), the Court shall grant relief from the automatic stay of 11 U.S.C. § 362(a), such as by terminating, annulling, modifying, or conditioning such stay, with respect to a stay of an act against single asset real estate by a creditor whose claim is secured by an interest in such real estate unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the Court determines that the debtor is subject to 11 U.S.C. § 362(d)(3), whichever is later – (A) the debtor has filed a reasonable possibility of being confirmed within a reasonable time; or (B) the debtor has commenced monthly payments that – (i) may, in the debtor's sole discretion, notwithstanding 11 U.S.C. § 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate. In sum, § 362(d)(3) means that unless a single asset real estate debtor, such as Debtor here, files an appropriate plan or commences making payments to the secured creditor within the statutory time period, or receives an extension of these time periods for cause, modification of the stay is warranted. South Side House, 474 B.R. at 417 (citing In re Crown Ohio Invs. LLC, No. 1-09-46767-dem, 2010 WL 935576, at *4 (Bankr. E.D.N.Y. Mar. 12, 2010)).

44. Debtor here has not made any monthly payments to ECP since the filing of its voluntary petition (and was not paying its obligations pre-petition, either) and has not filed a plan of reorganization. Accordingly, ECP is entitled to relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(3). See South Side House, 474 B.R. at 417.

45. Further, Debtor has not filed any of its required monthly operating reports, and there is no indication that Debtor expects to generate income at any time in the future. ECP therefore requests relief from the automatic stay so that it may pursue its non-bankruptcy rights to foreclose upon the Property.

**Debtor's Lack of Equity in the Property Is Grounds for Relief under § 362(d)(2)**

46. Section 362(d)(2) of the Bankruptcy Code authorizes the Court, in a Chapter 11 proceeding, to terminate the automatic stay with respect to Debtor's property if:

(a) the debtor does not have an equity in such property; and

(b) the property is not necessary to an effective reorganization.

See also Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.), 101 F.3d 882, 886 (2d Cir. 1996); In re Westchester Ave. Marina Realty, Inc., 124 B.R. 161, 165 (Bankr. S.D.N.Y. 1991).

47. For purposes of § 362(d), "equity" is the difference between the value of a property and the total of the claims it secures. See, e.g., Westchester Avenue Marina, 124 B.R. at 165. Here, Debtor valued the property at $1,949,130.00, while the amount due to ECP was no less than $2,329,133.02 as of the Petition Date. Additional interest continues to accrue upon the indebtedness. Accordingly, Debtor does not have any equity in the Property.

48. Under § 362(d), Debtor must also show that the property at issue is necessary to an effective reorganization. 11 U.S.C. § 362(d)(2)(B); United Savings Ass'n of Tex. v. Timbers

of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375 (1988).  To demonstrate "necessity" to an effective reorganization, Debtor must show that "the property is essential for an effective reorganization *that is in prospect*" and that there is a "reasonable possibility of a successful reorganization within a reasonable time."  Timbers of Inwood Forest, 484 U.S. at 376 (emphasis in original) (citation omitted).   Here, the Property is not necessary for Debtor's effective reorganization. Debtor's failure to file its required monthly operating reports indicates there is no hope of a reorganization because Debtor has no business activity or revenue, and Debtor has not otherwise provided any plan of reorganization.

49. Cause exists to terminate the automatic stay to permit ECP to exercise its rights pursuant to applicable non-bankruptcy law, including the foreclosure of the Property.

50. ECP intends to rely upon this Motion without filing a separate memorandum in support of this Motion.  However, ECP reserves the right to file additional or supplemental memoranda if, in ECP's opinion, such memoranda will assist the Court in making a determination of the matters raised hereby.

51. ECP respectfully requests that the 14-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3) be waived.

WHEREFORE, ECP Property II LLC respectfully requests that this Court enter an Order in the form annexed hereto as Exhibit 19:

    A.    Terminating the automatic stay to allow ECP to exercise its rights with respect to the Property under applicable non-bankruptcy law and the terms of the agreements between ECP and Debtor;

B. Allowing ECP to file, within thirty (30) days after the disposition of the Property, a proof of claim from which sales price, costs and expenses, net proceeds and deficiency, if any, may be determined; and

C. Granting ECP such other and further relief as is appropriate under the circumstances.

Dated: Baltimore, Maryland
February 2, 2015

**Leitess Friedberg PC**

　　　/s/ Gordon S. Young　　　
Jeremy S. Friedberg, *pro hac vice*
Gordon S. Young (GY-8331)
10451 Mill Run Circle, Suite 1000
Baltimore, Maryland 21117
jeremy.friedberg@lf-pc.com
gordon.young@lf-pc.com
(410) 581-7400

*Attorneys for ECP Property II LLC*